UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LINDA A. MADDOX,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-00368-LJV
DECISION & ORDER

---

On March 19, 2019, the plaintiff, Linda A. Maddox, brought this action under the Social Security Act ("the Act"). She seeks review of the May 2018 determination by the Commissioner of Social Security ("Commissioner") that she was not disabled from December 17, 2013, to December 31, 2013. Docket Item 1. On September 25, 2019, Maddox moved for judgment on the pleadings, Docket Item 7; on January 21, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on February 11, 2020, Maddox replied, Docket Item 14.

For the reasons stated below, the Court grants Maddox's motion in part and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Maddox argues that the ALJ erred in two ways. Docket Item 7-1. She first argues that the ALJ erred in determining her physical residual functional capacity ("RFC") because he relied on his own lay judgment over that of a medical professional. *Id.* at 16-23. Maddox also argues that the ALJ's decision to discount her credibility was not supported by substantial evidence. *Id.* at 23-26. The Court agrees that the ALJ erred in relying on his own lay judgment rather than soliciting medical source statements from Maddox's treatment providers and, because that error was to Maddox's prejudice, remands the matter to the Commissioner.

I.      **PHYSICAL RFC**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  That includes evidence from outside the disability period if that evidence relates to the relevant time frame.  *See, e.g.*, *Hartfiel v. Apfel*, 192 F. Supp. 2d 41, 44 (W.D.N.Y 2001) (considering treating physician's diagnoses of disability that postdated insured status).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [*sic*] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before giving less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight"

3

to a treating source opinion "is a procedural error."  *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Not all statements from treating sources constitute opinion evidence entitled to controlling weight, however.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  "Opinions on some issues, such as [an opinion that a claimant is 'disabled'" or 'unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner . . . ."  20 C.F.R. § 404.1527(d)(1).

Here, the ALJ gave "little" weight to the various assessments of Maddox's treating physician, neurosurgeon John Fahrbach, M.D., and her treating physician assistant, Michelle Patel, P.A.-C.[2]  *See* Docket Item 4 at 26.[3]  Dr. Fahrbach had treated

---

[2] When Maddox filed her claim, physicians assistants were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006).  But an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] ha[d] seen the individual more often . . . and ha[d] provided better supporting evidence and a better explanation for his or her opinion."  *Id.*; *see also Estrella*, 925 F.3d at 98 ("caution[ing] that ALJs should not rely heavily on the findings of consultative physicians after a single examination" (quoting *Selian*, 708 F.3d at 419)).  *Cf.* 20 C.F.R. § 416.902(a)(8) (2017) (expanding list of "acceptable medical sources" to include "[l]icensed [p]hysician [a]ssistant[s]").  Because PA Patel treated Maddox on at least three occasions over the course of four months, *see* Docket Item 4 at 390-99, and because her treatment notes also were reviewed and endorsed by physiatrist Bernard Beaupin, M.D., *see id.*, an ALJ reasonably might give her opinion significant weight.

[3] The ALJ referred to Dr. Fahrbach and PA Patel while discussing the opinion evidence in the record, but he in fact cited treatment notes from different providers.  For example, the ALJ cited pages 7, 14, 52, 59, 77 of Exhibit 17F, *see id.* at 26, which were

4

Maddox for chronic back pain related to a December 17, 2013 motor vehicle accident ("MVA") in August 2015, November 2015, and June 2016; however, it does not appear that he offered any "opinion" or disability assessment in any of his treatment notes. *See id.* at 436-68, 4501-51, 462-63, 495-96.  And PA Patel had opined in March, May, and June 2014 that, due to chronic back pain "causally related" to the same MVA, Maddox was "currently disabled." *Id.* at 393, 396, 399.  The ALJ explained:

> While [the] opinions were rendered by acceptable medical sources with a longitudinal treatment history with [Maddox], whether an individual is disabled or can work is an issue reserved to the Commissioner . . . . Furthermore, [the] opinions were rendered with the intent to be temporary, during the regular course of [Maddox's] treatment for pain management and recover post-surgeries[;] . . . utilize[d] different standards than that required by the Social Security Regulation[;] . . . did not provide specific function-by-function limitations about [Maddox's] ability to perform work-related activities[;] . . . [and were] not supported by the correlating [*sic*] clinical findings.

*Id.* at 26.

The ALJ similarly gave only "little" weight to the January 2015 opinion of Maddox's chiropractor, Julius Horvath, D.C.,[4] that Maddox was "[t]otal[ly] disabled." *See id.* at 26, 355.  The ALJ explained:

> While . . . [DC Horvath] ha[d] a longitudinal treatment history with [Maddox] for the impairments alleged, and personally examined and treated

---

notes from Graham Huckell, M.D., *see id.* at 670, 677, 715, 740, 722.  Similarly, the ALJ cited pages 42, 70, and 81 of Exhibit 17F, *see id.* at 26, but those were notes from A. Marc Tetro, M.D., *see id.* at 705, 732, 744.  The Court discusses Dr. Fahbach's and PA Patel's assessments first and addresses those of Drs. Huckell and Tetro later in this decision.

[4] Chiropractors also are "other source[s]," *see* 20 C.F.R. § 416.913(d)(1).  But because DC Horvath had treated Maddox for nearly a year when he rendered his assessment, his opinion reasonably could "outweigh the opinion of an 'acceptable medical source[ ].'"  *See* 71 Fed. Reg. at 45,596.  Indeed, because Dr. Horvath treated Maddox weekly from February 2014 (shortly after the MVA) through July 2015, *see* Docket Item 4 at 344-51, 361-66, he certainly had a better picture of her functioning—both longitudinally and with respect to the December 2013 disability period at issue—

5

> [Maddox], [he was an] . . . "other source" . . . .  Furthermore the opinion [was] vague and not expressed in vocationally relevant terms . . . providing a specific function-by-function analysis . . . .  Moreover, whether an individual can work goes to an issue reserved to the Commissioner . . . [and] the opinions were rendered with the intent to be temporary, during the regular course of recovery, and not an accurate depiction of [Maddox's] overall abilities to function.

*Id.* at 27.

The ALJ did not discuss—and therefore did not give any weight to—the opinions of orthopedic surgeons Graham Huckell, M.D., and A. Marc Tetro, M.D.  *See id.* at 26-27.  Dr. Huckell opined in March, April, May, and June 2014 that, due to knee injuries sustained in the December 2013 MVA, Maddox was "temporarily disabled in regards [*sic*] to the bilateral knees."  *Id.* at 677, 715, 722, 740.  *But see id.* at 670 (opining in February 2014, after initial evaluation, that Maddox was "able [to] continue working with respect to her knees").  Dr. Tetro opined in April, May, and June 2014 that, due to shoulder injuries sustained in the same MVA, Maddox was "unable to work and would be considered disabled with regards [*sic*] to the usual occupation."  *Id.* at 705, 732, 744.

The ALJ therefore did not explicitly address the *Burgess* factors before assigning "little" or no weight to the assessments of Dr. Fahrbach, Dr. Huckell, Dr. Beaupin, PA Patel, and DC Horvath.  This oversight does not, in and of itself, constitute a "procedural error," s*ee Estrella*, 925 F.3d at 96, because none of these assessments were true "medical opinions" entitled to deference; rather, they concerned "issues reserved to the Commissioner," *see* 20 C.F.R. § 404.1527(a)(1), (d)(1).  But the very fact that none of these statements qualified as medical opinions raises a related and similarly significant

---

than did the consulting physician, internist Hongbiao Liu, M.D., who examined Maddox once in July 2017.

6

error: the ALJ's failure to solicit a medical opinion, also known as a medical source statement, from a treating physician.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). And this obligation is not excused by the lapse of the relevant disability period. *See, e.g.*, *Perez*, 77 F.3d at 48 ("A treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques.").

The Commissioner's own regulations reflect this duty, explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)

7

(summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[5]) (additional citation omitted).  The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity.  The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 F. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted).  Although "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is appropriate where the records are not otherwise complete.  *See Tankisi*, 521 F. App'x at 34.  That is the case here.

Having minimized or entirely ignored Dr. Fahrbach's, Dr. Huckell's, Dr. Beaupin's, PA Patel's, and DC Horvath's assessments, the ALJ was left with only one medical opinion from which to construct Maddox's physical RFC:  the July 2017 opinion of the consulting physician, internist Hongbiao Liu, M.D., that Maddox had "moderate limitation[s] [in] prolonged walking, bending, kneeling, and overhead reaching" that "lasted or [were expected to] last for 12 consecutive months."  *Id.* at 1023, 1029.  But the ALJ gave that opinion only "partial" weight, rejecting many parts of it that were favorable to Maddox.  *See* Docket Item 4 at 26.  As a consequence, the ALJ's RFC

---

[5] This section was amended, effective March 27, 2017.  Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).  Because Maddox applied for disability benefits starting December 2013—that is, before the date the changes became effective—her claim is governed by the prior regulation.  *See id.* at 5844-46.

determination ultimately was based not on competent medical opinion but instead on his own lay judgment—underscoring the significance of his failure to solicit a medical source statement.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990)).

For example, the ALJ found that Dr. Liu's opinion that, due to reduced range of motion in the lower back and right knee, Maddox's use of a cane was "medically necessary" was "not supported by the totality of the evidence."  *See id.* (citing *id.* at 387, 409, 474, 490).  But any evidence questioning that opinion was hardly "overwhelming[ ]."  *See Shaw*, 221 F.3d at 135.  On the contrary, two of the four treatment notes to which the ALJ referred as contradicting Dr. Liu's opinion actually noted that Maddox walked with an antalgic gait, *notwithstanding her use of a cane.  See* Docket Item 4 at 387 (June 2016 treatment note from pain management specialist Jafar W. Siddiqui, M.D., finding full strength in lower extremities but observing "a mildly

9

antalgic gait using a straight cane" and finding limited range of motion in the right knee); *id.* at 490 (June 2016 treatment note from Dr. Siddiqui finding full strength in the lower extremities but observing "a mildly antalgic gait using a straight cane"); *see also id.* at 409 (April 2016 treatment note from orthopedic surgeon Andrew C. Stoeckl, M.D., finding full leg strength but limited range of motion in right knee); *id.* at 474 (February 2016 treatment note from Dr. Siddiqui finding full strength in lower extremities but limited range of motion and tenderness in the cervical and lumbosacral spine). "[A]s a lay person, the ALJ simply was not in a position to know whether" Maddox's ability to walk with a "mildly antalgic gait" while using a cane meant that she was able to walk without one entirely, *see Rosa*, 168 F.3d at 79.

Similarly, the ALJ did not include any of Dr. Liu's specific sit-stand or overhead reaching limitations in the RFC and increased Maddox's ability to climb, kneel, crouch, and crawl from "never" (as Dr. Liu opined) to "occasional." *See* Docket Item 4 at 22. But in support of these changes the ALJ cited only the four treatment notes discussed above—none of which in fact contradicted Dr. Liu's opinion. Indeed, as the ALJ elsewhere noted in his decision, none of these assessments provided the same sort of detailed, function-by-function analysis included in Dr. Liu's opinion. So, ultimately, the ALJ's rejection of Dr. Liu's limitations was based on nothing more than his own interpretation of certain cherry-picked treatment notes. That is hardly an "overwhelmingly compelling" critique, particularly because a number of other treatment notes not only supported Dr. Liu's opinion but also specifically linked her impairments to the December 2013 MVA—that is, to the relevant disability period. *See, e.g.*, *id.* at 288 (DC Horvath's March 2014 treatment note finding pain, tenderness, and reduced range

of motion in the cervical spine due to MVA); *id.* at 397-98 (PA Patel's March 2014 treatment note recording Maddox's reports of "constant, mostly sharp [pain] . . . rang[ing] from 9-10/10" that "radiates into the left shoulder and down the left arm but with intermittent pain down the right arm as well" and causes "numbness and tingling" in both hands; noting that back pain started "two days" after MVA; finding muscle spasms, trigger points, and reduced range of motion in the cervical and lumbar spine); *id.* at 437 (Dr. Fahrbach's August 2015 note observing that Maddox "change[d] position with great stiffness and effort," "push[ed] off from the chair to go from sitting to standing," and "st[ood] with a forward lean"; finding reduced range of motion in the spine); *id.* at 442, 464 (October and November 2015 treatment notes of Cynthia Paladino, P.T., finding severely limited range of motion in the cervical and lumbar spine due to injuries sustained during MVA); *id.* at 563 (February 2915 treatment note of orthopedic surgeon Edward D. Simmons, M.D., finding tenderness, pain, and reduced range of motion in the cervical spine); *id.* at 608-10 (July 2015 treatment note from internist Usman Khan, M.D., recording Maddox's complaint of chronic back pain resulting from MVA and reporting that Maddox had not achieved "any relief" from bilateral knee arthroscopies or shoulder and knee joint injections; observing "[a]bnormal" gait and that Maddox was "slow to get from sit to stand"); *id.* at 675-77 (Dr. Huckell's March 2014 treatment note finding reduced range of motion in the both knees and opining that she was "temporarily disabled" due to bilateral patellofemoral osteoarthritis related to MVA); *id.*at 704-05 (Dr. Tetro's April 2014 treatment note reporting tenderness and reduced range of motion in left shoulder related to MVA; diagnosing left shoulder impingement; opining that Maddox was "unable to work").

To the extent the ALJ discounted Dr. Liu's opinion because Dr. Liu was not a treating source or because Dr. Liu evaluated Maddox so long after the relevant disability period, this Court might well agree with that decision. Dr. Liu saw Maddox only once, nearly four years after the lapse her insured status. But, as discussed above, the necessary correlate of that determination was to solicit a treating source statement from a provider who saw Maddox around the relevant time period, not merely to discount the only true "medical opinion" in the record. *See also Perez*, 77 F.3d at 48 ("A treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques.").

Finally, remand is appropriate here because the ALJ's error in failing to solicit an opinion from a treating source likely inured to Maddox's prejudice. The ALJ found:

> [Maddox can] perform sedentary[6] work . . . except [she] can [only] occasionally climb ramps[,] stairs, ladder, ropes or scaffolds. [She] can [only] occasionally balance, stoop, kneel, crouch and/or crawl. [And Maddox] could perform simple, routine tasks and make simple work place decisions.

Docket Item 4 at 22. The ALJ concluded that "[c]onsidering [Maddox's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Maddox] could perform." *Id.* at 13. Specifically, the ALJ credited the testimony of a vocational expert that Maddox could find work as a document preparer, charge account clerk, and order clerk. *Id.* at 13-14.

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

It is impossible to say with certainty what parts of that RFC Dr. Fahrbach, Dr. Huckell, Dr. Beaupin, PA Patel, or DC Horvath might have disagreed with in a fully-developed medical opinion. But it is sufficient for this reviewing court to note that the ALJ's conclusions were not consistent with their assessments that Maddox was "disabled" or "unable to work," strongly suggesting that the ALJ's failure to obtain a treating source statement prejudiced Maddox. Moreover, Dr. Liu's opinion that Maddox could only sit, stand, and walk for limited periods of time might well have rendered her, according to the vocational expert's testimony, unable to remain on task long enough even for sedentary work. *See id.* at 76-77.

In sum, even if the ALJ did not violate the treating physician rule in minimizing the assessments of Dr. Fahrbach, Dr. Huckell, Dr. Beaupin, PA Patel, and DC Horvath, the ALJ still erred: because there was an "obvious gap[ ] in the administrative record" as it related to Maddox's functioning during the relevant disability period, the ALJ was obligated to make a reasonable effort to fill that gap before rejecting Maddox's application for disability benefits. More specifically, the ALJ was required to make an effort to obtain a medical source statement from a treating source familiar with her functioning at that time. Because he did not do so, the Court remands the matter so that the ALJ may develop the record and then re-evaluate Maddox's application in light of the expanded record.

## **CONCLUSION**

This Court therefore remands the matter for further record development and reconsideration of Maddox's RFC.  The Court "will not reach the remaining issues raised by [Maddox] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Maddox's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:      August 14, 2020
            Buffalo, New York


                                    */s/ Hon. Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE